## Case No. 11,777.

### In re RICHARDSON et al.

[2 Story, 571;[1] 6 Law Rep. 392.]

Circuit Court, D. Massachusetts. Dec., 1843.

STATUTES—TIME OF ENACTMENT—FRACTION OF DAY —REPEAL—BANKRUPTCY.

1. The doctrine that in law there is no fraction of a day, is a mere legal fiction, and is true only sub modo, and in a limited sense, where it will promote the right and justice of the case.
[Cited in brief in American Wood-Paper Co. v. Glen's Falls Paper Co., Case No. 321a. Cited in Salmon v. Burgess, Case No. 12,-262; Burgess v. Salmon, 97 U. S. 384.]
[Cited in Arrowsmith v. Hamering, 39 Ohio St. 578; Westbrook Manuf'g Co. v. Grant, 60 Me. 93.]

2. By the constitution of the United States, the very time of the approval of a public law, constitutes the time as to when the law is to have its effect, and then to have its effect prospectively, and not retrospectively.
[Cited in brief in American Wood-Paper Co. v. Glen's Falls Paper Co., Case No. 321a. Cited in Burgess v. Salmon, 97 U. S. 384; Maine v. Gilman, 11 Fed. 216; U. S. v. Chong Sam, 47 Fed. 883.]
[Cited in Biggs v. McBride (Or.) 21 Pac. 880; Parkinson v. Brandenburg, 35 Minn. 296, 28 N. W. 920.]

3. A petition for the benefit of the bankrupt act [of 1841; 5 Stat. 440], was filed in the district court on the third day of March, 1843, about noon; the act of the third of March, 1843 [Id. 614], repealing the bankrupt act, passed congress, and was approved by the president, late in the evening of the same day. Held, that the court had jurisdiction of the petition at the time when it was filed and acted upon, and that it had full jurisdiction to entertain all proceedings thereon, to the close thereof, according to the provisions of the bankrupt act. See In re Howes [Case No. 6,788].
[Disapproved in Re Welman, Case No. 17,-407. Cited in Re McKenna, 9 Fed. 29.]
[Cited in Potter v. Rio Arriba Land & Cattle Co. (N. M.) 17 Pac. 612.]

[In the matter of Joseph Richardson and another, bankrupts.]

The following statement of facts, and the question arising thereon, was adjourned into this court from the district court of Massachusetts, to wit: The petition for a decree of bankruptcy, in this case, was filed about noon of the third day of March, A. D. 1843, and due notice thereof was ordered and published, and the same was duly proved in court, on the second Tuesday of May following, being the time and place appointed for

1 [Reported by William W. Story, Esq.]

the hearing of said petition. The act of congress, entitled "An act to repeal the bankrupt act," was approved by the president of the United States, late in the evening of the same third day of March, to wit, several hours after the filing of said petition. Whereupon counsel, for the petitioner, raised the following preliminary question for the decision of the court: "Has the district court jurisdiction to receive said petition, and entertain all proceedings thereon to the close thereof, according to the provisions of the act, entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' approved on the 19th day of August, A. D. 1841?"

No person appeared to contest the application of the petitioners.

J. Giles, for petitioners, argued as follows:

The case is apparently new. After considerable investigation, I am not able to refer the court to any well settled authorities, which bear directly upon the point to be decided. The discussions in the English and foreign law of the proper rule to be adopted in fixing the commencement of new statutes, and the time when treaties shall take effect, relate principally to the injustice of considering a statute in force, in all parts of an extended country before it can possibly be known to all the citizens, and the impossibility in point of fact of bringing any law to the actual knowledge of all persons who are to be governed by it, and are too remotely connected with the exact point in this case to justify me in bringing them under the review of the court. I do not find well considered decisions sufficiently in point to enable the court to decide this question upon authority. This case must turn upon its own merits, and some peculiar considerations, soon to be noticed, drawn from the language of the constitution of the United States.

The case finds that the petitioners filed their petition to be declared bankrupts on the third day of March, 1843, several hours before the president had signed the repealing act, on the same third of March, 1843. The repealing act is in the following terms—"Be it enacted, &c. That the act entitled an act to establish a uniform system of bankruptcy throughout the United States, approved on the nineteenth day of August, eighteen hundred and forty-one, be, and the same hereby is, repealed. Provided that this act shall not affect any cause or proceeding in bankruptcy commenced before the passage of this act, or any pains, penalties or forfeitures, incurred under the said act; but every such proceeding may be continued to its final consummation, in like manner as if this act had not been passed. Approved March 3, 1843." This act saves all cases in bankruptcy commenced before its passage. The passage of this act is matter of record, and it stands upon the public records, "Approved March 3, 1843." The filing of the petition in bankrupt-

cy by the petitioners is also a matter of record, and it stands on the records of the court, "Filed March 3, 1843." See Bankrupt Act, § 13, rules 1, 3. The petition, therefore, does not come within the proviso of the repealing act, unless a fraction of a day be allowed, and it can be legally shown, as the case finds, that in point of fact the petition was filed some hours before the repealing act was approved and signed by the president.

In England, prior to April 8, 1793, every act of parliament, in which no particular time was specified for its commencement, was held to operate and take effect from the first day of that session of parliament wherein it was made. Panter v. Attorney General (May 25, 1772), 6 Brown, Parl. Cas. 486. In Latless v. Holmes, 4 Term R. 660, it was held, that an act to take effect from and after its passage, operated by legal relation from the first day of the session, and the court relied upon Panter v. Attorney General, just cited. In Latless v. Holmes, the court observed, that though the day when the act received the royal assent be stated in this case, we can only know by reference to the statute book, when the act passed. This rule, that acts of parliaments, when no time was fixed for their commencement, related to and took effect from the first day of the session, was declared as early as Henry VI., and adhered to down to April 8, 1873, though the consequence of it was sometimes to render an act murder, which would not have been so without such relation. Dwar. St. pt. 2, p. 682, and cases there cited. The statute of 33 Geo. III. c. 13, reciting that the above rule of law is liable to produce great and manifest injustice, enacted that the clerk of the parliament should indorse on every act of parliament to be passed, after April 8, 1793, immediately after the title of the act, the day, month and year when the same shall have passed and received the royal assent, and such indorsement shall be taken to be a part of the act, and to be the date of its commencement, when no other commencement shall be therein provided. Since this act, I do not find any instance, where it has been inquired into, what particular hour of the day an act passed and received the royal assent.

It is an ancient maxim, that in law a day is like a mathematical point, admitting of no fractions—such is the general rule; but there are exceptions, where it is necessary for the purposes of justice to distinguish time with accuracy. Although the law does not in general regard a fraction of a day, yet a day is always considered divisible for the purposes of justice; for fictions of law hold only in respect to the ends and purposes for which they were invented. Morris v. Pugh, 3 Burrows, 1241. In Combe v. Pitt, Id. 1434, Lord Mansfield observed: "But though the law does not in general allow of the fraction of a day, yet it admits it in cases where it is necessary to distinguish. And I do not see

why the very hour may not be so too, when it is necessary and can be done: for it is not like a mathematical point, which cannot be divided." In consideration of law, there is priority of time in an instant, as it may be divided into two parts. Co. Litt. 185, 186. The court will notice a fraction of a day in administering the bankrupt law. Where the question was between an assignee and attaching officer, which should hold certain property of the bankrupt, the court ruled that the exact time of the attachment and of the act of bankruptcy might be shown, which was first in point of fact, though appearing of record to be of the same day. Thomas v. Desanges, 2 Barn. & Ald. 586; Sadler v. Leigh, 4 Camp. 197; Stead v. Gascoigne, 8 Taunt. 527; 8 Ves. 80. In Massachusetts, the day, hour and minute of recording deeds, and of making attachments of real estate, are made matter of record. Rev. St. c. 90, § 20; Id. c. 59, § 24. In private instruments to take effect from the day of the date; the day of the date may be taken inclusive or exclusive, according to the subject matter, and so as to effectuate the intention of the parties. Pugh v. Duke of Leeds, Cowp. 714. As the bankrupt act was remedial, it may perhaps be fairly inferred that it was the intention of congress that the repealing act should not take effect until after the 3d of March, 1843, exclusive. In point of fact the bankrupt act of August 19, 1841, was in force when the petition in this case was filed, and that fact cannot be altered or done away with by any legal fiction or relation. If the repealing act defeats the petition in this case, it does so by a retrospective operation. Statutes are to be considered prospective, and not to prejudice or affect the past transactions of the subject, especially where it would tend to produce injustice or inconvenience. Whitman v. Hapgood, 10 Mass. 437.

Perhaps it will be asked, can the repealing act be good for any part of the 3d of March, and not for the whole day? I answer, it can, unless reasons of public policy or expediency forbid the inquiry as to the exact time when an act received the approbation and signature of the president. To subject the president to an inquiry as to the exact time when he signed a bill is certainly very objectionable; and other inconveniences will readily suggest themselves as being likely to occur if the executive could defer the operation of an act until the last minute of the day on which he should sign it. But all these considerations must give way to the demands of justice, or to the just requirements of the constitution. The language of the constitution of the United States is somewhat peculiar on this subject. Const. U. S. art. 1, § 7: "Every bill which shall have passed the house of representatives and the senate shall, before it become a law, be presented to the president of the United States, if he approve, he shall sign it, but if not, he shall return it, &c.; if approved by two thirds of both houses

by yeas and nays entered upon the journal, it shall become a law—if not returned within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, &c. Every order, resolution or vote, &c., shall be presented to the president of the United States, and before the same shall take effect, shall be approved by him, &c." Can an act, after it is approved and signed by the president, by legal relation take effect, become a law, and be in force prior to such approval and signature, without violating the express language and intention of the constitution? And the question is, can an act not approved nor signed by the president until ten o'clock at night on the third of March, render void this proceeding in bankruptcy which was commenced about noon on the same third of March, when the bankrupt law was in full force and operation; especially as the repealing act expressly saves all proceedings in bankruptcy commenced before the passage of that act? An affirmative reply to this question cannot be given upon any other ground than that the law in such cases as this admits of no fractions of a day. In Re Howes [Case No. 6,788], in Vermont, Prentis, J., decided that a petition filed on the third of March was too late, and that the court could take no order upon it except to dismiss it. In New York, petitions filed on the third of March have been received and proceeded in to their final consummation.

There is a general principle, running through all our American constitutions, that no bill or act shall become and have the force of law until certain formalities, which are in the nature of checks and restraints, have been complied with; and the inference I would draw from that fact, is, that it is contravening the policy of our written constitutions to allow an act to have the force of law, by relation even for that portion of the day of its passage, which has transpired before all the constitutional requisites have been actually fulfilled. Const. Mass. c. 1, § 2: No bill or resolve of the senate or house of representatives shall become a law, or have force as such until it shall have been laid before the governor for his revisal: and if he, upon such revision, approve thereof, he shall signify his approbation by signing the same, &c.

The question whether the district court has jurisdiction over the petition in this case, is a difficult one, and I am not able to satisfy my mind fully which way it should be decided. Common sense, the facts in the case, and the language of the constitution seem to go in favor of the jurisdiction, although a decision to that effect might lead to the practice of noting the hour and minute of the passage of an act, instead of merely noting the day, as is now the practice;—or it might lead to a better practice still, that of making all laws to take effect from some fixed and future day, thereby giving the people a chance to know the laws by which they are to be governed before they have unwittingly transgressed them.

STORY, Circuit Justice. The present question embraces some novelty as to the interpretation of statutes, and the time of giving them effect. It appears, from the statement of facts, that the petition in this case for the benefit of the bankrupt act of 1841, c. 9, was filed on the third day of March, 1843, about noon; and that the act of third of March, 1843, c. 82, repealing the bankrupt act, passed congress, and was approved by the president, late in the evening of the same day. The language of this last act is, "That the act entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' approved on the 19th day of August, 1841, be, and the same is hereby repealed." There is a proviso, "that this act shall not affect any case or proceeding in bankruptcy commenced before the passage of this act." Now, upon this posture of the case, the question arises, whether the repealing act took effect by relation, from the commencement of the third day of March, 1843; or, whether it took effect only from the act of approval by the president, on the evening of the same day. If the former be the true, legal interpretation, then the district court had no jurisdiction to entertain the petition; if the latter be the true intendment of law, then the district court had a clear jurisdiction in the premises, and the jurisdiction having once attached, the proviso saves all farther proceedings under the petition.

I am aware, that it is often laid down, that in law there is no fraction of a day. But this doctrine is true only sub modo, and in a limited sense, where it will promote the right and justice of the case. It is a mere legal fiction, and, therefore, like all other legal fictions, is never allowed to operate against the right and justice of the case. On the contrary, the very truth and facts, in point of time, may always be averred and proved in furtherance of the right and justice of the case; and there may be even a priority in an instant of time; or in other words it may have a beginning and an end. See Digges' Case, 1 Coke, 174; Fitzwilliam's Case, 6 Coke, 33; Co. Litt. 135a; Vin. Abr. "Time," A, 3, pl. 7. The common case put to illustrate the doctrine, that there is no fraction in a day, is the case, when a person arrives at majority. Thus, if a man should be born on the first day of February, at 11 o'clock at night, and should live to the 31st day of January, twenty-one years after, and should at one o'clock of the morning of that day make his will, and afterwards die by six o'clock in the evening of the same day, he will be held to be of age, and his will be adjudged good. Here the rule is applied in favor of the party, to put a termination to the incapacity of infancy. The case of Fitzhugh v. Dennington, 2 Ld. Raym. 1094; Id. 6

Mod. 260; 1 Salk. 44,—fully supports this doctrine, and it stands recognised and confirmed in other cases. See Com. Dig. "Infant," A; Wrangham v. Hersey, 3 Wils. 274; Herbert v. Turball, 1 Keb. 52; Sid. p. 163, pl. 18; Anon., 1 Ld. Raym. 480. But, many cases may easily be put, where the real fact is allowed to prevail, and to be conclusive. Thus, for example, if a woman makes a deed of her land in the morning, and is afterwards married, or dies on the same day, the deed is good. So, if my ancestor die at five o'clock, in the morning, and I enter into his lands at six o'clock, and make a lease at seven o'clock of the same day, the lease is good. So, if the ancestor, and his immediate heir, both die on the same day, and the inheritance would pass to different persons, according to the survivorship of the ancestor, or the heir, then, the actual fact, which survived the other, may be proved, so as to pass the inheritance to the proper party entitled thereto. Nay, the question of survivorship, may often, in the absence of direct proof, be decided by mere presumption, from age, sex, constitution, and other circumstances, where both perish by the same common calamity, as by the foundering of the ship, at sea, in which they are both embarked. In short, the true doctrine, upon this whole subject, is laid down in Wrangham v. Hersey, 3 Wils. 274, where the court said: "It is said, that there is no fraction in a day; but this is a mere fiction in law ('Fictio juris neminem lædere debet'); but avail much it may. And this is seen in all matters, where the law operates by relation, and by division of an instant, which are fictions in law." And, after putting various other illustrations, the court added: "By fiction of law, the whole time of the assizes, and the whole session of parliament may be, and sometimes are considered as one day; yet the matter of fact shall overturn the fiction in order to do justice between the parties." See Com. Dig. "Temps." c. 8. In Combe v. Pitt, 3 Burrows, 1423, 1434, Lord Mansfield approved a similar doctrine, and said: "But, though the law does not, in general, allow of the fraction of a day, yet it admits it in cases, where it is necessary to distinguish. And I do not see, why the very hour may not be so too, where it is necessary, and can be done; for, it is not like a mathematical point, which cannot be divided." So that we see, that there is no ground of authority, and, certainly, there is no reason to assert, that any such general rule prevails, as that the law does not allow of fractions of a day. On the contrary, common sense and common justice equally sustain the propriety of allowing fractions of a day, whenever it will promote the purposes of substantial justice. Indeed, I know of no case, where the doctrine of relation, which is a mere fiction of law, is allowed to prevail, unless it be in furtherance and protection of rights, pro bono publico. But it appears to me, that the doctrine assumes a broader importance, under the constitution and laws of the United States.

By the constitution of the United States, "every bill, which shall have passed the house of representatives and the senate, shall, before it become a law, be presented to the president of the United States; if he approve it, he shall sign it; but, if not, he shall return it, with his objections, to the house in which it shall have originated." [Article 1, § 7.] Now, it seems to me clear, from this language, that in every case of a bill, which is approved by the president, it takes effect as a law only by such approval, and from the time of such approval. It is the act of approval, which makes it a law; and, until that act is done, it is not a law. The approval cannot look backwards, and, by relation, make that a law, at any antecedent period of the same day, which was not so before the approval; for the general rule is, "Lex prospicit, non respicit." Branch, Max. p. 99 (Jenk. Cent. text, 284). The law prescribes a rule for the future, not for the past; or, as it is sometimes expressed, "Lex dat formam futuris, non preteritis negotiis." And this, in a republican government, is a doctrine of vital importance to the security and protection of the citizen. It is fully recognised in the constitution itself, which declares, that no ex post facto law shall be passed. Put the case, that a statute, passed on the third of March last, which created and punished as public offences certain acts, which were not so before the passage of the statute; and the statute was approved at eleven o'clock at night; and an act was done, in the preceding part of the day, which was innocent at the time when it was done; could it be contended, that the party would be punishable therefor by relation; or that it was not within the prohibition of the constitution, as an ex post facto law, so far as it operated upon his case? If it should be said, that the law does not recognise any fractions of a day, why may we not deem the law in force only from the last instant of the day, instead of carrying it back, by relation, to the first instant of the day? If there be any choice, as to the principle of interpretation, one should think, that that ought to be adopted, in cases of this sort, which is most favorable to private rights and public justice. Surely the constitution is not to be set aside, or varied in its intendment, by mere legal fictions. On the contrary, it appears to me, that in all cases of public laws, the very time of the approval constitutes, and should constitute, the guide as to the time, when the law is to have its effect, and then to have its effect prospectively, and not retrospectively. It may not, indeed, be easy, in all cases, to ascertain the very punctum temporis; but that ought not to deprive the citizen of any rights created by antecedent laws, and vesting rights in them. In cases of doubt, the time should be construed favorably for the citizen. The legislature have it in their pow-

er to prescribe the very moment, in futuro, after the approval, when a law shall have effect; and if it does not choose to do so, I can perceive no ground, why a court of justice should be called upon to supply the defect. But, when the time can be accurately and fully ascertained, (as in the present case) when a bill was approved, I confess, that I am not bold enough to say, that it became. by relation, a law at any antecedent period of the same day. I cannot but view such an interpretation as at war with the true character and objects of the constitution.

Upon the whole, my opinion is, that the question adjourned into this court by the district court, ought, upon the statement of facts, to be answered in the affirmative; and that the district court had jurisdiction of the present petition at the time when it was filed and acted upon; and that it has full jurisdiction to entertain all proceedings thereon, to the close thereof, according to the provisions of the bankrupt act of 1841, c. 9.