## WESTBROOK MANUFACTURING CO. *vs.* ISAAC R. GRANT.

*Time—computation of. Bankruptcy. Attachment.*

The maxim that in law there are no fractions of a day does not apply to proceedings in bankruptcy, where the exact time when the event occurred is made certain by record.

Thus, where a debtor's property was attached at seven o'clock in the afternoon of March 8, and his petition in bankruptcy under the U. S. Bankruptcy Act of 1867, was filed at two o'clock and fifty minutes in the afternoon of the 8th of July next succeeding; *Held*, that under § 14, the attachment was dissolved, the time between the two events falling short of four months by four hours and ten minutes.

ON EXCEPTIONS to the rulings of *Goddard*, J., of the superior court for this county.

CASE against the defendant as sheriff of the county of Waldo, for the delinquency of his deputy in not surrendering property at-

tached on a writ in favor of the plaintiffs, against James Treat and William Treat.

It appeared that the Westbrook Manufacturing Company sued out a writ in assumpsit against the Treats from the supreme judicial court of this county, on March 6, 1867. *Ad damnum* $4,000. That one Low, deputy of the present defendant, attached a stock of goods belonging to the Treats at seven o'clock in the afternoon of the 8th of March, 1867.

It also appeared that the original petition in bankruptcy of James Treat and William Treat was filed July 8, 1867, at two o'clock and fifty minutes in the afternoon.

That the bankruptcy of the Treats was suggested at the Oct. Term, 1867; that special judgment for plaintiffs for $2,020.88 debt, and $38.01 cost, Oct. 12, 1869; that execution issued Oct. 14, 1869, and was delivered to Irvin Calderwood on Nov. 9, 1869, then sheriff of the county of Waldo; who thereupon demanded the goods attached of said Low, who then and there refused to surrender or show the same to said Calderwood.

Upon the foregoing facts the presiding justice ruled, as a matter of law, that the proceedings in bankruptcy dissolved the attachment, and ordered judgment for the defendant. To which ruling the plaintiffs alleged exceptions.

*W. L. Putnam*, for the plaintiffs.

I. All the evidence as to the precise hours of the day when each event occurred, is immaterial.

The law does not generally regard fractions of a day, except where actual injustice would otherwise be done, or where it is necessary to determine priority between transactions of the same date. It is inconvenient, unnecessary, and would involve great uncertainty and embarrassment to investigate minute and unimportant questions of time.

See the remarks of Judge Prentiss on this general principle in the matter of Wellman; 7 Law. Rep. 25; *Windsor* v. *China*, 4 Maine, 302; *Lester* v. *Garland*, 15 Ves. 253.

II. Time is not computed from a fixed 'day' or 'date' here, but from event to event.

Notwithstanding all the discussion that has taken place, unless this case shows some reason to the contrary, in computing from an act, the rule is to include the day of the act. The party who claims to compute otherwise, must bring himself within some exception to this rule. Soldiers' Voting Bill, 45 N. H., 613 ; *Windsor* v. *China*, 4 Maine, 303 ; *Atkins* v. *Sleeper*, 7 Allen, 488.

As this is a question of construction of a law of the United States, the decisions of the supreme court on this point are conclusive.

In *Griffith* v. *Bogert*, 18 How, 162–3, the court says : ' In common and popular usage the day *a quo* has always been included, and such has been the general rule both of the Roman and common law.' ' In the present case there is no reason for departing from the general rule and popular usage of treating the day from which the term is to be calculated or terminus *a quo* as exclusive.' See also, *Arnold* v. *U. S.*, 9 Cranch, 104.

' The first day of July is not within four months of the first day of March, but is four months from or after. There cannot be five first days of five several calendar months, within four calendar months.' The same remarks apply to the days March 8th and July 8th. An attachment made July 8th is not within four months of an event happening March 8th, but is at least four months after. On July 8th a child born March 8th may, in popular phrase, be said to be four months old, and to have been born four months ago, but unless fractions are closely calculated neither in popular nor strict manner of speaking, would any one say he was born within four months.

But this being a nice rule of law, based on a nice use of language, exceptions to it are favored whenever the reason of the case, the necessity or convenience of the parties, or the general purpose of the instrument or statute involved render it justifiable so to do. *Windsor* v. *China*, *supra* ; *Griffith* v. *Bogert*, *supra*.

Among the exceptions are the following :

1. Where the time for doing an act is so short that the conclu sion is irresistible that the first day is excluded, as where a notice is to be given within two days. *Tellew* v. *Wonford*, 9 B. & C. 134.

3. To save forfeitures and to prevent estoppels for which pur- poses the court favor a liberal construction in this as in other mat- ters, as in cases of seizure of personal property on execution, of rights to redeem from mortgages or levies, of forfeitures of leases and of statute estoppels in pauper suits. *Windsor* v. *China, supra ; Berry* v. *Spear*, 13 Maine, 187 ; *Sheets* v. *Selden*, 2 Wallace, 177 , *Wing* v. *Davis*, 7 Maine, 33 ; *Moore* v. *Bond*, 18 Maine, 144 ; *Lester* v. *Garland, supra.*

3. Where persons are bound by law or contract to perform some act and liable to penalty or suit for not doing it, as obligations' to pay money, to return executions, notes, and other commercial paper.

4. Where the language used is doubtful, but such construction is necessary to confirm and avoid destroying any *bona fide* transac- tion or title. *Griffith* v. *Bogert, supra ;* which exception, perhaps, is embraced in the principle of the above No. 2.

In all other well-considered cases of departure from the general rule there has been some special reason in each case, indicating some special necessity or intention, which should control this as it would any other question of construction.

In this case, is there any such ? Can any reason be thought of why the assignee should be favored over a diligent creditor who made an attachment so long before the bankruptcy proceedings commenced ? Is not the defendant seeking t) destroy a title *bona fide* obtained, within the meaning of *Griffith* v. *Bogert, supra.*

In the case last cited the form of the statute was the converse of the language in this case ; it prohibited doing a thing until af- ter the expiration of a certain number of months from an event. And the court held that the day corresponding to the eighth day of July in this case was after, so of course it was not within.

*Bank* v. *Burr*, 24 Maine, 266, was a case where the statute pro-

vided that the whole capital of the bank should be paid in within twelve months after receiving the charter; and further, that no stock should be transferred till the capital was so paid in. The charter was granted April 1, 1836, and the stock transferred April 1, 1837. The court held that there was a presumption, though there was no evidence that the capital was paid in within the twelve months, but that the transfer was not within twelve months after receiving the charter, ' for an act might legally have been done under the charter April 1, 1836.' That opinion was moreover delivered by the same judge who delivered the opinion in *Moore* v. *Bond, supra.* Now under this statute a petition in bankruptcy could be filed on the day of the attachment, after the attachment, so as to count one day upon the four months, precisely as in the last case the first of April, 1836, could count on the year.

III. To understand why this period of four months was fixed, reference must be had to §§ 35 and 39.

As all these sections are in *pari materia*, it cannot be denied that the six months in § 39 is the same period as the six months in § 35; and that the period of four months in § 35 is to be computed on the same principle as the period of six months in the same section.

The four months under discussion was evidently fixed for the same reasons as the four months in § 35, and is, therefore, the same period of time.

It follows that all these various periods are to be computed on the same principle.

The period of six months in § 39 is a period of limitation, within which a creditor is allowed to commence proceedings.

It is a privilege which he may or may not avail himself of, and not a duty which he must perform to save himself from suit, penalty, or forfeiture, or even to save his claim. The law, therefore, is not to be extended to favor him.

The petition may be filed the day the act of bankruptcy is committed. Wydown's case, 14 Vesey, 85.

The period named in a statute of limitations ordinarily includes

the day when proceeding may be commenced, was fully settled in *Presbrey* v. *Williams*, 15 Mass. 143; *Little* v. *Blunt*, 8 Pick. 488.

Our court in *Berry* v. *Spear*, 13 Maine, 190, made some comments on *Presbrey* v. *Williams*, but neither affirmed or disaffirmed it, as they finally rested the case at bar on the fact that no part of the day of the levy can practically be used for making the record.

IV. A similar question arose in *Cowie* v. *Harris*, 1 Moody & M. 141, in which Lord Tenterden decided that on a commission issuing on May 14th, a dealing on March 14th is valid, as more than ' two calendar months ' before the issuing of the commission.

*Howard & Cleaves*, for the defendant.

WALTON, J. This is an action against the sheriff of the county of Waldo, for the alleged misdoings of his deputy in not keeping property attached. The defendant claims that the attachment was dissolved by the debtor's going into bankruptcy within four months after it was made.

The fourteenth section of the United States bankrupt act declares that any attachment of the bankrupt's property, made within four months next preceding the commencement of the proceedings in bankruptcy, is thereby dissolved.

The attachment in this case was made March 8, 1867, at seven o'clock in the afternoon. Proceedings in bankruptcy were commenced July 8, 1867, at two o'clock and fifty minutes in the afternoon. The time between the two events is four hours and ten minutes less than four months. It is, therefore, clear that the attachment was, in fact, made within four months next before the proceedings in bankruptcy were commenced. We fail to perceive any good reason why the attachment shall not be held to have been dissolved. Certainly it must be, if the exact truth and an accurate computation of the time are allowed to prevail.

The objection is, that such a decision will conflict with the maxim that in law there is no fraction of a day. But this maxim is a self-evident fiction; and, as Judge Story said in Richardson's case, 2 Story, 571, is true only *sub modo*, and in a limited sense, where

it will promote the right and justice of the case, and is never allowed to operate against the right and justice of the case. It is undoubtedly a very useful maxim when properly applied, as in the service of legal precepts and notices generally, and in mercantile contracts, as it avoids the inconvenience of endeavoring to ascertain with precision at what hour of the day the precept or notice was served, or at what hour a note or bill of exchange, payable on time, was signed, etc. But in a case like this, where the conflicting claims of creditors are to be determined by an accurate computation of time, and we have the means before us of computing the time accurately, and there is no inconvenience to be avoided, we think that any maxim which should lead the court to decide contrary to the truth, would be misapplied. The bankrupt act makes the commencement of the proceedings in bankruptcy the initial point, or *terminus a quo*, of the four months in question; and with positive record evidence before us, of the exact time when that event occurred, it seems to us it would be a plain and willful violation of the statute to commence the computation at any other time. We think the computation in this case should commence on the 8th of July, 1867, at two o'clock and fifty minutes in the afternoon, that being the precise time when the proceedings in bankruptcy were commenced, and by then reckoning backward four calendar months we shall reach the 8th of March, 1867, at the same hour of the day, namely, two o'clock and fifty minutes in the afternoon. By thus measuring the time truly and accurately, we shall see that the attachment was within the four months by four hours and ten minutes; for it was not made till seven o'clock in the afternoon of that day. It being thus demonstrated that the attachment was within four months next preceding the commencement of the proceedings in bankruptcy, our conclusion is that it was thereby dissolved. And in this conclusion we think we are not only justified by reason and the express requirements of the statute, but also by authority.

Professor Parsons says that in the application of the insolvent laws, the very hour is inquired into; that he is aware of no cases where the technical rule of the law, that no fraction of a day can

be allowed, has been adhered to in bankruptcy, save the matter of David Howes, 6 Law Reporter, 297; and the matter of Wellman, 7 id. 25, where the doctrine laid down in the first case is maintained and defended; and he expresses the opinion that the views of the judge, though able, savor of technicality. He says further, that the reason, or at least the justice, of allowing the exact time to be inquired into, is obvious; that if one's rights depend upon whether a certain thing was done more or less than a certain number of months before another, it is as proper to ascertain the exact time as it is when there is a question whether an attachment of land, or the record of a conveyance, was first made. Pars. Merc. Law, 2 ed. 282–3.

*Godson* v. *Sanctuary*, 4 Barn. & Adol. 255, is a case directly in point. There the bankrupt's goods had been seized on execution, and the question was, whether more or less than two calendar months had elapsed between the seizure and the time when he went into bankruptcy, and whether, in computing the time, the court could take notice of the fraction of a day; and the court held that they could. 'If,' said Baron Park, ' the fraction of a day be taken into account (as it may), it would appear that more than two calendar months had elapsed between the time of the seizure and the issuing of the commission; that is, between eleven o'clock of the forenoon of the 13th of August, and twelve o'clock of the 13th of October; because sixty-one complete days, which are the two calendar months, would have elapsed by eleven o'clock of the 13th of October, and the commission did not issue until twelve or one o'clock of that day.'

Mr. Powell says that the legal fiction that there is no fraction of a day, like all other legal fictions, holds good only in respect of the ends and purposes for which it was invented; that when it is urged to an intent not within the reason or policy of the fiction, the truth may be shown; that the presumption of law that an act done on any particular day was done the first moment of that day (which is only another mode of saying there is no fraction of a day), can never operate where there is positive evidence of the fact; for the

positive evidence must always control the presumptive; and he refers to many cases in illustration of these propositions. Powell on Powers, 631–7.

And in *Bigelow* v. *Wilson*, 1 Pick. 485, Mr. Justice Wilde says, ' This maxim is a fiction of law, and when it is material to distinguish, the truth may be shown; for a fiction of law, introduced for the sake of convenience and justice, ought never to be allowed to work a wrong; thus, when it is necessary to determine the priority of two attachments, the precise time of each attachment may be shown; and so in many other cases.'

We think these authorities abundantly justify us in the conclusion to which we have come, and which we have already expressed. Many others to the same effect, both English and American, could be cited; but we deem it unnecessary to do so. And we will add that this conclusion renders it unnecessary for us to enter the vortex of conflicting decisions, as to whether, in the computation of time from an act done, the day on which the act is done should be included or excluded. A very good review of the authorities upon this point will be found in 4 Am. Law Reg. (new series), 222, in which the learned writer comes to the conclusion that under statutes and rules of court, the current of authorities runs strongly in favor of excluding the day on which an act is done, an event happens, or of a date referred to, in the computation of time therefrom; and several of the decisions in this State, and the leading case of *Bigelow* v. *Wilson*, 1 Pick. 485, are among the authorities cited in support of the conclusion. If we should adopt the same view, the result would be the same as that to which we have already arrived.

*Exceptions overruled.*

APPLETON, C. J.; CUTTING, KENT, BARROWS, and DANFORTH JJ., concurred.