Hillsborough, }
March 3, 1936. }

MONROE LOAN SOCIETY OF NEW HAMPSHIRE *v.* VIRGINIA NUTE.

*Albert J. Lemieux* (by brief and orally), for the plaintiff.

*James A. Broderick* (by brief and orally), for the defendant.

ALLEN, C. J.   By the state constitution (Const., Pt. II, *art.* 44) "Every bill which shall have passed both houses of the general court, shall, before it become a law, be presented to the governor, if he shall approve, he shall sign it, . . . ."   Until thus signed the bill is not a law.

There being no record or other evidence to show whether the transaction between the parties was governed by the act amended or by the amendment, no logical conclusion of fact can be drawn to determine the issue.   In respect to fact, all that can be said is that

one law or the other is applicable. No balance of probabilities exists one way or the other. And one law or the other being in force to govern the transaction, the conclusion that neither law governs because the applicable one is not in fact ascertainable, does not follow. This would be in defiance of the fact.

To say that the law cannot be stated because of failure of its proof would be to disregard the authority and duty of the courts to adjudicate litigation according to the law. The law is not to fail, but is to be declared. And the unwritten law has virtue by which the written law may be asserted. Common-law principles, not designed to ignore fact, but established to meet the impossibility of finding it, are to be employed. If the result does not accord with the fact, no evidence can be offered that such is the result. Although the record and evidence of the exact time of the passage of the amendment are lacking, inability to administer justice between the parties does not follow. Resort to recognized legal principles and procedure leads to a legal determination of the sequence between the issuance of the note and the passage of the amendment, without involving a conjectural finding of fact.

The constitution and legislation making no provision for exact ascertainment of time and the executive department having no system for determining it, it is fairly to be held that the lawmakers intended that the courts shall apply common-law rules for the ascertainment in controversies between litigants. Even although thereby the sequence in one situation may be held to be reversed in another, there is no incongruity in holding a statute applicable in some instances at a given time, but not in others until a later time. It is conceivable that in another case there might be proof of a reversed sequence. It is equally consistent that different circumstances might call for such a reversal under the application of legal principles. Therein, in final analysis, the margin of variation is of application of controlling rules, and not of time. The time although unknown is fixed, but application of rules to varying circumstances may produce varying results. It is not to be regarded that the law is in force throughout the day of its passage, but with the amended law remaining in force during that day as to transactions in which serious injustice would be done if its repeal or change were fully operative. But the principles by which the secondary burden of proof shifts may lead to such an outcome.

As usually phrased, the law disregards fractions of a day in considering the time of passage of a statute when the exact time is not

shown. Since the passage of the statute is at some time during the day, the day is the day of passage, and it is held as a general rule that the statute is law from the beginning of the day. But the day must have begun. And it is equally logical to hold the passage deferred until the end of the day. The test is met if the passage is before the next day has begun. It is as probable that the change in the law occurred at the end of the day as at its beginning. The only real probability is that the amendment was passed at some time during the day substantially later than its beginning and substantially earlier than its ending. There is thus in practical outcome a choice in holding the passage as an early or late event of the day, to be exercised according to the common-law merits of the situation.

"It is true that for many purposes the law knows no division of a day, but whenever it becomes important to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day as readily as into the fractions of any other unit of time. 2 Black., Com. 140, notes. The rule is purely one of convenience, which must give way whenever the rights of parties require it. There is no indivisible unity about a day which forbids us, in legal proceedings, to consider its component hours, any more than about a month, which restrains us from regarding its constituent days. The law is not made of such unreasonable and arbitrary rules." *Grosvenor* v. *Magill*, 37 Ill. 239. ". . . common sense and common justice equally sustain the propriety of allowing fractions of a day, whenever it will promote the purposes of substantial justice." *In re Richardson*, 2 Story, 571. And a rule that the full day must be taken in all cases where the division of the day may not be shown, does not seem demanded. Its inflexible character bars the assertion and employment of well established and recognized legal principles and works hardship. It tends to deny, rather than to admit, the use of normal tests of right and wrong in the law.

"Retrospective laws are highly injurious, oppressive and unjust. No such laws therefore, should be made, either for the decision of civil causes, or the punishment of offenses." Const., Pt. I, *art.* 23. A rule which gives, or probably gives, retroactive effect upon a transaction is within the condemnation of the article. And that it may produce such effect is good reason for the preference of one avoiding the possibility. It is more in keeping with the spirit of the constitution and more conformable to tenets of natural justice that a transaction between parties should be subject to a law honestly thought by them to be in force rather than by another then only possibly in

force. To hold that the amendment was in force throughout the day of its passage, aside from its conflict with the probabilities, would here, in hard and fast application, expose the plaintiff to criminal prosecution for charging an illegal rate of interest as provided by the statute (P. L., c. 269, s. 28).

While the plaintiff had as its primary burden of proof the risk of non-persuasion upon all the evidence, the duty to go forward and produce evidence might shift as a subsidiary rule of procedure. *Spilene* v. *Company*, 79 N. H. 326, 328, 329. Here it showed a law in effect at the beginning of the day on which it had its business with the defendant. That law continued in force until the business was done unless meanwhile it was amended. That the amendment had then been passed was, in reasonable justice, for the defendant to show. If the practical effect is to postpone the operation of the amendment until the day following, it is justified as the choice between such a result' and one which cannot logically be held free from retroactive taint.

The amended act was law until approval of the amending law. The amending act was not law until its approval. It has not been shown that the amendment was in force when the note was delivered. The plaintiff has made out its case unless the defendant proves that passage of the amendment preceded the delivery of the note. This she cannot do without depending upon a presumption not warranted as one of fact and here arbitrary to employ as one of law. The finding of the plaintiff's good faith is the guide to the shift of the burden of proof. It is as probable as not that the parties did their business while the amended statute remained in force, and as the plaintiff acted in honest belief that it was the applicable law, justice requires that the mandate of a law not shown then to be fully enacted should be unobserved. There is no holding that the amendment was not passed until the end of the day of its passage. It is held that a burden of proof is placed upon the defendant which she is unable to meet. The circumstance of honest purpose and conduct on the plaintiff's part demands the imposition of the burden.

In *Kennedy* v. *Palmer*, 6 Gray 316, support is found for the imposition of a burden on a defendant to produce evidence of the time of change in the statutory law to entitle him to the benefit of the change.

*Judgment on the verdict*

All concurred.