## Case No. 17,407.

### In re WELMAN.

[7 Law Rep. 25; 20 Vt. 653.]

District Court, D. Vermont.    April, 1844.

STATUTES—TIME OF TAKING EFFECT—BANKRUPTCY.

1. The time when an act of congress, which is approved and signed by the president of the United States, takes effect, must appear, and can properly appear, only from the act itself.

2. A petition for a declaration of bankruptcy, presented on the third day of March, 1843, was too late, and must be dismissed.

3. The doctrine of this court in Re Howes [Case No. 6,788] restated and affirmed. But see In re Richardson [Id. 11,777].

[4. Fractions of a day are not to be noticed in determining the time of the passage of a law of congress. The law goes into effect from the beginning of the day of its date, unless otherwise provided.]

[Disapproved in Salmon v. Burgess, Case No. 12,262. Cited in Gardner v. Barney, 6 Wall. (73 U. S.) 510. Approved in Lapeyre v. U. S., 17 Wall. (84 U. S.) 198.]

[Cited in Westbrook Manuf'g Co. v. Grant, 60 Me. 89, 95.]

In bankruptcy.

This was a petition by Deluis Welman, representing himself to be unable to meet his debts and engagements, and praying for the benefit of the bankrupt law. The petition was filed March 3d, 1843, and no proceedings having been had upon it in consequence of the clerk's refusing to issue the usual order, the petitioner now filed his motion for an order of notice to creditors and others to show cause why he should not be declared a bankrupt.

PRENTISS, District Judge. In Re Howes [Case No. 6,788] it was determined by this court, that a petition for the benefit of the bankrupt law, presented and filed on the 3d of March, the day the law was repealed, was too late, and that no order could be taken upon the petition other than to dismiss it. An opposite decision having been recently pronounced in a neighboring circuit. I am now called upon to re-examine the question; and I can very freely say, that it is not at all a subject of regret, that an opportunity is.thus afforded me to review my former opinion, and to overrule it if found to rest on mistaken principles or unsound reasoning. When Lord Hardwicke, having reason to alter his opinion on a particular occasion, said he was not ashamed of doing so, for he always thought it a much greater reproach in a judge to continue in his error than to retract it, he exhibited an example of true wisdom and real elevation of character which it would be well for all judges to take as a guide. I hope I am capable of appreciating, as it deserves, this high example of judicial intelligence and virtue, and that I shall never be so forgetful of what is due to an enlightened and scrupulous discharge of duty, as to fail to follow the example on every fit and proper occasion.

The question presented in this case first came before me at the last May term of this court, in Ward v. Slosson [unreported], a case of compulsory bankruptcy. I then considered the question, and came to the conclusion that the petition could not be sustained; but as the case involved property to a large amount, and the question raised was one of some novelty and much importance, I thought it would be advisable, especially as there were several other cases depending upon the decision, to adjourn the question into the circuit court for final determination. I accordingly did so; but no hearing being had upon the question in the circuit court, the counsel for the petitioning creditors at the October term declining to proceed further upon it, and the case of In re Howes [supra] coming up soon after, I delivered the opinion I have already mentioned. As to the correctness and soundness of that opinion, considering the question as a question of law depending upon rules and principles of law, I certainly entertained no doubt before the publication of the decision in Re Richardson [Case No. 11,777]. I have carefully read that case, and well weighed the authorities, principles, and reasoning urged in it. The decision, considering the high source from which it proceeds, is entitled to high respect and deference; but like all other decisions under the bankrupt law in other circuits, it is of no binding authority here. Notwithstanding all that is urged in the case, I am obliged to say, that I still remain of the opinion, that a petition, presented and filed on the day the act repealing the bankrupt law was passed, cannot be sustained.

It appears to me, that the rule that there are in law no divisions or fractions of a day, if applicable to any question whatever, is emphatically applicable to this. The rule, in my apprehension, is not to be treated as a mere unmeaning legal fiction, existing in speculation and theory only, and of no practical use or value. That there is no apportionment of a single day, or any account made of hours and minutes, besides being true by general habit and custom in the transaction of much of the business of life, is a rule or axiom of law founded in convenience and utility, and is of real practical efficacy, as far as it prevails, in avoiding the uncertainty and difficulties attending questions concerning minute and unimportant divisions of time. Still, the rule, though a general rule of law. does not apply in all cases, but. like most other general rules, is subject, in its application, to just and reasonable exceptions. It does not prevail in questions concerning merely the acts of parties, where it becomes necessary to distinguish and ascertain which of several persons has a priority of right; as where a bond and release are executed on the same day; where a bond is executed by a woman the same day she marries; where the disseisin is done the same day the writ is tested; where goods are seized under an execution on the same day the defendant commits an act of bankruptcy; where two writs of execution are delivered to the sheriff on the same day; or

where the question is as to the time of suing out a writ or delivering a declaration; in short, in most, if not all questions respecting private transactions, where priorities in a single day may exist, and it is practicable as well as essential to the purposes of justice, to inquire into them. But though divisions of a day are allowed to make priorities in questions concerning private acts and transactions, they are never allowed to make priorities in questions concerning public acts, such as legislative acts or public laws, or such judicial proceedings as are matters of record. When it was the law in England that every act of parliament took effect the first day of the session unless the act appointed another time for its commencement, it was held, that in case of two acts made at the same session, one could not have priority over the other, for being made at one day, and instant in contemplation of law, they should be construed as if all was in the same act. So in regard to judgments, while they were considered as rendered on the first day of the term unless there was some memorandum to the contrary, the same principle prevailed. In Pugh v. Robinson, 1 Term R. 116, Buller, J., said, there being no fractions of a day in judicial proceedings, where there are two judgments, both referring to the same day, the priority of one cannot be averred. The doctrine undoubtedly holds equally good under the modern regulations, which require an indorsement to be made upon every act of parliament of the day of its being approved by the crown, and an entry of record of every judgment of the day when signed. Lord Mansfield, in Combe v. Pitt, 3 Burrows, 1423, recognizes and admits the general rule. After observing that the law does not, in general, allow of the fraction of a day, he says it admits it in cases where it is necessary to distinguish, and he does not see why the very hour may not be shown. where it is necessary and can be done. To this I agree. But is it necessary, and can it be done in this case? That is the question. If it cannot be done, or is not proper to be done, then the case falls within the general rule, and the general rule must govern it. It seems plain to me. that the time when an act, which is approved and signed by the president, takes effect, must appear, and can properly appear only from the act itself. By a standing general enactment, the act, when approved and signed, is to be forthwith lodged in the department of state and published; and the act so lodged in the department of state, or a certified transcript or authorized printed copy of it, is of course the only proper evidence, not only of its existence as a law, but of the time of its commencement; though it may be necessary and admissible in some instances, particularly when an act becomes a law by not being either signed or returned with objections. or by being returned and repassed by congress, to carry back the inquiry to the legislative journals. But it would be as unsafe, as it would

be unfit, to allow the commencement of a public law, whenever the question may arise,. whether at a near or distant time, to depend upon the uncertainty of parol proof, or upon anything extrinsic to the law and the authenticated recorded proceedings in passing it. In the case of Latless v. Holmes, 4 Term R. 660, which arose upon an act to take effect from and after its passage, it was determined that the time when the act passed could be known only by reference to the statute book. That would seem to be the sound and true doctrine upon the subject; and it appears to be fully confirmed by the observations of Lord Tenterden in Rex v. Justices of Middlesex, 2 Barn. & Adol. 818, where, speaking in reference to the time when acts of parliament were considered as referring to the first day of the session, he says, that if two acts, passed in the same session, were repugnant, it was not possible to know which of them received the royal assent first, for there was then no indorsement, as there is now, of the actual day on the roll.

As already suggested, now, in England as well as here, the operation of every act commences from the time of its approval by the executive, unless it is otherwise provided in the act. By the statute (33 Geo. III. c. 13) it is enacted, that upon every act of parliament, the day, month and year of its receiving the royal assent shall be indorsed, and such indorsement shall be taken to be a part of the act, and to be the date of its commencement, when no other comment is therein provided. The matter here, under the provisions of the constitution, or the practice of the government, as to the time when a law takes effect on being approved and signed by the president, is, in my judgment, placed upon no different footing. Neither in such case, any more than in the case where a law takes effect on being returned by the president with objections and repassed by congress, or on not being signed or returned within ten days after being presented to him, are any divisions of a day either implied or contemplated. The president has a right to retain a bill ten days for consideration, and if he approves it on any day within that time, he indorses the day of its approval upon the bill. The hour of the day, according to uniform and uninterrupted usage, never appears—for the reason, undoubtedly, that it is considered the same in legal effect, and consequently immaterial, whether the approval is upon one moment of the day or another. All we know, or can judicially know, is what appears from the date of the approval, which is a part and an . essential part of the act, and anything beyond that we have no legal means of knowing. It is legally impossible, therefore, to distinguish between different parts of the day, if it was admissible to do so; and I must add,. that I cannot see either the fitness, propriety. policy, or necessity. of introducing into the law. if practicable. the anomaly of making a repealing act. and the act repealed, both in

·force and operation on one and the same day —one act on one part of the day, and the other act on the other part of the day.

So far as it concerns the commencement or termination of public laws, a da,· is an indivisible portion of time; and, I repeat, it would be unfit. inconvenient, and serve no valuable purpose, in my opinion, to have it otherwise. Of what practical importance can it be, whether a law takes effect on one or another part of a particular day? If it be meant that no law should go into operation, before the people have had the means of knowing its provisions, the proposition is a plain one, and easily understood; but it is not so easy to see or understand how it can be very material, so far as it respects the people's knowing or having the means of knowing the law, whether it takes effect the first or last part of the day on which it is approved. Whether a law ought to be made to take effect immediately on its passage, is a matter very proper for the consideration of the legislature. All laws, before they become such, pass through several stages, and are usually very slow in their progress. While they remain in transitu in congress, which is commonly a considerable time, the various proceedings upon them are spread abroad over the country through the medium of the public journals; and as it is known and understood that laws, after passing through the different legislative stages, take effect, in general, and unless it is otherwise specially provided, the day they are approved and signed by the president, there is very little reason for saying there is any surprise upon the public.

It would seem, however, to be more proper, as being more agreeable to the spirit of our institutions, that criminal laws, especially such as create new offences, or augment the punishment of old ones, should be made to take effect on a fixed future day, in order that they may be published and promulgated before they go into operation; but if made to take effect immediately on their passage. as it is generally supposed they may be constitutionally, it would be of very little consequence, as to any purpose of notice or publicity, at what part or hour of the day their operation commences. The supposition that there may. by possibility, be in point of fact, if not of law, a retrospective or ex post facto operation in such a case. proves, if it proves anything at all, not that we should divide the day into parts and restrict the law to the precise moment when it was actually approved, which we have seen to be impracticable, but, rather, that we should exclude the day of passing the law. which would not be impracticable, altogether from its operation; thus making criminal laws an exception to the general rule which has long obtained in the construction of statutes in this particular, and which is expressly confirmed and settled, as we shall hereafter see, by a modern adjudication of the best and highest authority. But, then, if we are to reason from supposed possible cases, we ought not to overlook the possible one of a criminal law being repealed and an act prohibited by· it being committed on the same day of its repeal; and we should not be unmindful of what would be the effect, in such case, of excluding the day, or, according to a late suggestion, of suspending the operation of the repeal in judicial construction until the last instant of the day. It is easy to suppose extreme cases; but remote bare possibilities, however ingeniously put, merit but little ·onsideration in settling a general principle.

As I have already said, the question arising in this case was first presented to me in a case of compulsory bankruptcy, which, whatever it may be in form, partakes in some measure of the nature of a criminal proceeding. I was called upon to say, whether you could coerce a man into bankruptcy against his will, divest him of all his property and rights of property, put a stop to his occupation, and break up his business, under a proceeding instituted and commenced on the day the bankrupt law was repealed. The question comprehended not only this, but also whether you could prosecute, and punish criminally, false swearing, or any other forbidden act done under ·such proceeding. I thought the question a very grave one, and felt its weight and importance. I thought what I have stated could not be done consistently with established legal principles; and I did not feel authorized to introduce new rules or new principles of law, or at liberty to indulge in any subtlety or refinement on old ones, to enable me to ·sustain a proceeding involving such consequences.

All agree that the material point in this case is, when did the act repealing the bankrupt law take effect? The whole question depends upon that. Now, I think this point has long ago been decided and settled in this country. It was decided and settled, as it appears to me, by the supreme court of the United States, in the case of Arnold v. U. S., 9 Cranch [13 U. S.] 104. The question in that case was, whether a certain cargo of goods, imported into the United States, came under the operation of the act of 1812, imposing double duties. The act provided, that an additional duty of one hundred per cent. upon the permanent duties imposed by existing laws, should be levied and collected upon all goods, wares, and merchandise, which should, from and after the passing of the act, be imported into the United States from any foreign port or place. The act was approved and signed by the president on the 1st day of July, and the goods were imported into the United States on the same day. The. question was, whether the goods were subject to the double duties imposed by the act; and this depended upon a decision of the question when the act took effect.

It is insisted by counsel, that the court ought to give such a construction to the act, as that no citizen could, by possibility, be sub-

jected to its operation before it had actually passed; and that to prevent this, the court must either exclude the 1st day of July altogether, or must admit fractions of a day and suffer an inquiry into the very moment of time when the act received the signature of the president; for, if a vessel had arrived in the morning of the 1st day of July, and the act was not in fact approved by the president until the afternoon of that day, it could not be pretended that the goods brought in such vessel were imported after the passing of the act; and it was argued, that the difficulties attending an inquiry into the time when a law was approved, as well as the impropriety of calling on the president for information as to the moment when it received his sanction, might induce the court to say, that when the act was to take effect from and after the passing of the same, they would, as a general rule, exclude the day on which it passed. Such were the considerations urged by the learned counsel in the case; and it will be perceived that they are substantially the same, as those which have been presented on this occasion. But the court repudiated the argument of the learned counsel altogether, and held the construction contended for to be entirely inadmissible. · They said the statute was to take effect from its passage, and it was a general rule, that. when the computation was to be made from an act done, the day on which the act was done is to be included. This was a direct recognition, that, in a question as to the time when a law takes effect, there are no parts or divisions of a day. The day is to be included, because, there being no fraction of a day, the act relates to the first moment of the day on which it is done, and as if it were then done. This is the very reason given in the books for the rule the court rely upon. Instead of intimating, that there could be any fraction of a day in such a question, or that it would be proper to reverse the general rule of law and consider the act in force only from the last instant of the day, the court held, that the day on which the act was approved was to be included in its operation, and that goods imported on that day must be taken to have been imported after the passing of the act, and of course were liable to the double duties imposed by it. Such was the decision; and it surely could not have been supposed at the time that the decision was at all at variance with any of the provisions of the constitution, or in the slightest degree incompatible with any of its principles or objects.

The case to which I have just referred is certainly a very strong case, and appears to me to be exactly in point. It decides, that an act, which is to take effect from and after its passage. goes into operation the day on which it is approved, and includes the day. The determination is one of high and paramount authority, and. in my judgment, covers the whole question presented in the present case. Looking, then, both to principle and

authority, I am not able to see that there is any substantial ground for doubt upon the matter. Still, as different views have been expressed elsewhere, and as I never wish the rights of any party to be conclusively bound by my opinion, when there is any way open for an appeal to a higher tribunal, I shall very readily allow the question, if the petitioner desire it, to be certified into the circuit court, to be there ultimately settled and finally disposed of.