UNITED STATES v. ISELIN et al.   SAME v. HIRSCH et al.   SAME v. DYER et al.

(Circuit Court, S. D. New York. March 11, 1898.)

Nos. 2638, 2640.

CUSTOMS DUTIES—TIME OF TAKING EFFECT OF DINGLEY LAW.
    The tariff act of 1897 took effect only from the moment of its approval by the president, which was 6 minutes past 4 o'clock p. m., Washington time, on July 24, 1897, and goods imported and entered for consumption on that day, but prior to such approval, were dutiable under the law of 1894.

These are appeals by the United States from decisions of the board of general appraisers at New York sustaining protests of importers; the question involved being a determination of the time at which the tariff act of 1897, known as the "Dingley Law," became operative. The board, in deciding the question, rendered an opinion as follows:

    The question involved in these protests relates to the precise time when the tariff act entitled "An act to provide revenue for the government and to encourage the industries of the United States," approved July 24, 1897, went into effect. The government seeks to maintain the proposition that it became operative from the earliest moment of the day on which it was signed by the president, i. e. at 12 o'clock midnight of July 23, 1897. The importers' claim that it became operative only from 4:06 o'clock p. m. (Washington time) of July 24, 1897, the hour at which the president is known to have approved the bill as it came from the conference committee of the senate and house. On the decision of this issue depends the question as to whether the goods under consideration are liable to assessment for duty under the tariff act of 1897, as assessed by the collector, or the act of 1894, under which they are claimed in the protests to be subject to classification by the importers.
    The material facts of the case we find to be as follows: (1) The importations in question consist of a quantity of wool, which arrived at the port of Boston on the forenoon of July 24, 1897. (2) The goods were entered for consumption before 12 o'clock noon of that day, and permits of delivery from the collector and naval officer were at once placed in the hands of the importers, stamped "Free," under the provisions of paragraph 685 of the tariff act of 1894, which placed in the free list all imported wool. (3) The entries were afterwards liquidated by the collector, so as to classify and assess the wool for duty under paragraph 357, Schedule K, of the tariff act of July 24, 1897, which levied a duty of 11 cents

per pound on imported wool of class 1. (4) We find, further, that the tariff act of July 24, 1897, entitled "An act to provide revenue for the government and to encourage the industries of the United States," was approved by the president of the United States at six minutes after 4 o'clock p. m. (Washington time) on the day of its date. Under this state of facts, the importers claim in their protests that the wool was free of duty under paragraph 685 of the tariff act of 1894, and that the collector erred in assessing duty on it under the act of 1897.

The above findings of fact are based in part on the following admission in writing, made without prejudice by the authorized counsel of the treasury department acting for the government, which is offered in evidence by the importers:

"The government admits that the act entitled 'An act to provide revenue for the government and to encourage the industries of the United States' was signed by the president at six minutes after 4 o'clock in the afternoon of the 24th day of July, 1897 (Washington time). This admission is made without prejudice to the government, and subject to objections as to its materiality and relevancy.

"October 5, 1897.                                     W. J. Gibson,
"Counsel for the Treasury Department in Cases Before the Boards of U. S. General Appraisers."

The government, by its counsel, contends that the evidence offered as to the hour of the day the act was approved is irrelevant and immaterial, because it legally became operative by relation from the first moment of the day of its date, and no reasons exist for excepting this case from the general rule of law which does not permit fractions of a day to be considered. This presents the pivotal point of the whole case under consideration. The adjudged cases are conflicting in both the federal and state courts as to how far the law will recognize fractions of a day in cases of this kind. The question of import duties, being one which may be reviewed by the federal courts, should, in our judgment, be governed by the decisions of those courts, rather than by authorities based on state decisions. The first section of the tariff act of July 24, 1897, provides as follows: "That on and after the passage of this act, unless otherwise specially provided for in this act, there shall be levied, collected, and paid upon all articles imported from foreign countries, and mentioned in the schedules herein contained, the rates of duty which are, by the schedules and paragraphs, respectively prescribed, namely: [Here follow the various schedules.]" Section 2 of said act, relating to the "Free List," is as follows: "Sec. 2. That on and after the passage of this act, unless otherwise specially provided for in this act, the following articles when imported shall be exempt from duty." Section 33 reads as follows: "Sec. 33. That on and after the day when this act shall go into effect, all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or the withdrawal thereof." Section 34 repeals sections 1 to 24, both inclusive, of the tariff act of August 28, 1894, and "all acts and parts of acts" inconsistent with the provisions of the present act of July 24, 1897, "said repeal to take effect on and after the passage of this [latter] act." It is further provided by said section 34: "* * * But the repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before the said repeal or modifications; but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. Any offenses committed and all penalties or forfeitures or liabilities incurred prior to the passage of this act under any statute embraced in or changed, modified, or repealed by this act may be prosecuted or punished in the same manner and with the same effect as if this act had not been passed. All acts of limitation, whether applicable to civil causes and proceedings or to the prosecution of offenses or for the recovery of penalties or forfeitures embraced in or modified, changed, or repealed by this act shall not be affected thereby; and all suits, proceedings, or prosecutions, whether civil or criminal, for causes arising or acts done or committed prior to the passage of this act may be commenced and prosecuted within the same time and with the same effect as if this act had not been passed. * * *"

There is no controversy, and certainly there can be no reasonable contention, at least under the federal decisions, as to the day this act took effect. The phrases "on and after the passage of this act," as used in sections 1 and 2, and, "on and after the day when this act shall go into effect," appearing in section 33, unquestionably embrace at least a portion of the day of its approval by the president, which was July 24, 1897. That the law took effect on the date of approval is clear from the following authorities: Arnold v. U. S., 9 · Cranch, 104; Suth. St. Const. § 112, and cases cited; Louisville Tp. v. Savings Bank, 104 U. S. 469, 475; 1 Kent, Comm. 457. The question at issue has been argued by counsel on both sides with much ability and research, both orally and in briefs, and in a manner to greatly lighten the labor of investigation by the board. The general rule may be conceded to be, as contended by the government counsel, that, when no special circumstances exist, a statute will ordinarily be construed to take effect from the earliest moment of the day of its approval, unless some other time is named. It was so held in Arnold v. U. S., 9 Cranch, 104, decided by the supreme court in February, 1815, the opinion being delivered by Mr. Justice Story. This case involved a question of import duties arising under a tariff act approved July 1, 1812, the importation under consideration having been made on the same day the act was approved. It did not appear, however, what was the precise hour of the day the president approved the act, or at what hour the cargo arrived. That act imposed an additional duty of 100 per cent. upon all merchandise "which shall, from and after the passing of this act, be imported into the United States from any foreign port or place." It was held that a cargo of goods arriving in port on July 1, 1812, was subject to this additional duty, the court observing: "The statute was to take effect from its passage; and it is a general rule that, when the computation is to be made from an act done, the day on which the act is done is to be included." Following this general rule, and on the authority of this case, the attorney general advised the secretary of the treasury on March 10, 1875, that duties imposed by section 1 of the act of February 8, 1875 (chapter 36), accrued on importations made on the day the act was approved, no question being directly presented as to fractions of a day. 14 Ops. Attys. Gen. U. S. 542.

There are some decisions also which have applied the same general principle to proclamations of the president, holding that they take effect as of the beginning of the day of their date. U. S. v. Norton, 97 U. S. 164, reaffirming Lapeyre v. U. S., 17 Wall. 191. As said by Mr. Justice Harlan, in Louisville Tp. v. Savings Bank, 104 U. S. 469, 475, after referring to these cases and to the Arnold Case, supra: "But to these general rules there are established exceptions, as an examination of adjudged cases and elementary treatises will show." After reviewing the adjudged cases, English and American, including all reported federal decisions, speaking for the supreme court, he asserts that "it cannot be doubted that the court may, when substantial justice requires it, ascertain the precise hour when the statute took effect by the approval of the executive." It was accordingly decided by the court that the constitution of Illinois, which was adopted and went into effect on July 2, 1870, would not be construed retrospectively to invalidate certain township bonds issued in aid of a railroad, in the forenoon of the same day, under a pre-existing statute, which lawfully authorized their issue, although the new constitution prohibited them. The clearly announced doctrine of this case of Louisville Tp. v. Savings Bank, 104 U. S. 469, which is the latest deliverance of the supreme court on this particular subject, may be stated to be that, when it is necessary to determine conflicting rights, courts of justice will take cognizance of the fractions of a day. This case repudiates the ancient doctrine that the law would in no case recognize fractions of a day, and that all statutes are to be construed to take effect from the first moment of the day of their approval by the executive. The court there approved the rule declared in Grosvenor v. Magill, 37 Ill. 239, as being "consistent with sound reason and public policy," and as being "in line with the settled course of decisions in other courts." This language is quoted from the Illinois decision: "It is true that for many purposes the law knows no divisions of a day, but whenever it becomes important to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day as readily as into the fractions of any other unit of time. 2 Bl. Comm. 140, notes. The rule is purely one of convenience, which must give way whenever the rights of parties require it.

There is no indivisible unity about a day which forbids us, in legal proceedings, to consider its component hours, any more than about a month which restrains us from regarding its constituent days. The law is not made of such unreasonable and arbitrary rules." So, in Bank v. Burkhardt, 100 U. S. 686, 689, it was said: "For most purposes, the law regards the entire day as an indivisible unit. But when the priority of one legal right over another, depending on the order of events occurring on the same day, is involved, this rule is necessarily departed from." The principle is thus stated in 23 Am. & Eng. Enc. Law, p. 215, citing the above case and many other authorities: "The view which seems to be supported by the weight of authority is that a bill becomes operative only from the time of its approval; that the doctrine that there is no fraction of a day is a legal fiction, which may be overthrown by the fact, when necessary, in order to accomplish substantial justice. Accordingly, whenever a question arises as to the time when a statute took effect, the court may resort to any source of information which, in its nature, is capable of conveying to the judicial mind a clear and satisfactory answer to the question, the best and most satisfactory evidence in all cases being required." A like view is taken in Suth. St. Const. § 110: "The weight of American authority," concludes the author, "is that a statute which is to go into effect immediately is operative from the instant of its passage." So in Potter's Dwar. St. p. 401: "Common sense and common justice equally sustain the proposition of allowing fractions of a day whenever it will promote the purposes of substantial justice. The time of the approval of an act is a question of fact. The constitution declares that to be the time when the law takes effect. This act of approval cannot look backward, and by relation or fiction make that a law at any antecedent period of the same day which was not so before the approval. The constitution cannot be abrogated by construction. The law prescribes a rule for the future, not for the past; and this, in a republican government, is a doctrine of vital importance to the security and protection of the citizen."

It is provided by the constitution of the United States (article 1, § 7) that "every bill shall take effect as a law from the time of its approval by the president." In the case of In re Richardson, 2 Story, 571, Fed. Cas. No. 11,777, where this clause of the constitution was construed by Judge Story, it was held by the United States circuit court that the act of March 3, 1843 (repealing the bankruptcy act of 1841), which repealing act was passed by congress and approved by the president late in the afternoon of said date, did not affect jurisdiction of a petition filed about noon on the same day. In referring to the above clause of the constitution, the learned judge said: "Now, it seems to me clear from this language that in every case of a bill which is approved by the president it takes effect only by such approval, and from the time of such approval. It is the act of approval which makes it a law, and until that act is done it is not a law. The approval cannot look backward, and by relation make that a law at any antecedent period of the same day which was not so before approval, for the general rule is, 'Lex prospicit, non respicit.' The law prescribes a rule for the future, not for the past." Judge Story observed further that the oft-repeated doctrine that in law there is no fraction of a day is true only in a limited sense "when it will promote the right and justice of the case." "It is," he said, "a mere legal fiction, and, therefore like all other legal fictions, is never allowed to operate against the right and justice of the case." This decision was made about 30 years after that in the Arnold Case, supra, the opinion being in each case by the same judge. They can be readily harmonized in principle. Louisville Tp. v. Savings Bank, 101 U. S. 475; Salmon v. Burgess, 1 Hughes, 356, Fed. Cas. No. 12,262. We shall not consume time in reviewing the numerous adjudications which support the above conclusion. The cases are admitted to be in conflict, but the weight of reason and authority, in our judgment, supports the views above announced. Louisville Tp. v. Savings Bank, 104 U. S. 469; Burgess v. Salmon, 97 U. S. 381; In re Richardson, 2 Story, 571, Fed. Cas. No. 11,777; In re Wynne, Chase (Johnson's Rep. 251) 227, Fed. Cas. No. 18,117; Bank v. Burkhardt, 100 U. S. 686, 689; Grosvenor v. Magill, 37 Ill. 239; Croveno v. Railroad Co., 150 N. Y. 225, 230, 44 N. E. 968; People v. Clark, 1 Cal. 406; Salmon v. Burgess, 1 Hughes, 356, Fed. Cas. No. 12,262; Combe v. Pitt, 3 Burrows, 1433; In re Ankrim, 3 McLean, 285, Fed. Cas. No. 395; Kennedy v. Palmer, 6 Gray, 316; Bemis v.

Leonard, 118 Mass. 502; 1 Kent, Comm. 457; Arrowsmith v. Hamering, 39 Ohio St. 573; Strauss v. Heiss, 48 Md. 292; Brainard v. Bushnell, 11 Conn. 16.

The counsel for the government makes the further contention that, while the law often takes cognizance of the fractions of a day to determine conflicting priorities of private rights, the rule has no application to a public statute involving a contest between the citizen and the government in a case of this kind. As much, it is true, was said by Judge Prentiss in Re Welman, 20 Vt. 654, but the case of Burgess v. Salmon, 97 U. S. 381, is an authority clearly to the contrary. That was a contention between a citizen and the government, involving the validity of an internal revenue tax on certain tobacco. In the forenoon of March 3, 1875, the owners of a quantity of tobacco stamped, sold, and removed it for consumption from the place of manufacture, it being subject, under section 3368 of the United States Revised Statutes, to a tax of only 20 cents per pound. On the afternoon of the same day, the president approved the act of March 3, 1875 (18 Stat. 339), increasing the tax to 24 cents per pound, but providing that such increase should "not apply to tobacco on which the tax under existing laws shall have been paid when this act takes effect." It was agreed, as a matter of fact, that the duty of 20 cents had been paid, and the tobacco had been removed, before the act in question had been approved by the president. It was said by the court, after citing the seventh section of article 1 of the federal constitution, above quoted by us: "In the present case the president approved the bill, and the time of such approval points out the earliest possible moment at which it could become a law, or, in the words of the act of March 3, 1875, at which it could take effect." This case clearly decides that the law would, under the facts stated, regard the fractions of a day so far as to hold that a statute imposing an additional tax on goods would not be construed to be retrospective for a single moment, so as to affect the rights of the citizen already accrued under a previous statute imposing a lower rate of duty on the like merchandise. The act was held, in other words, not to take effect at the earliest hour of the day of approval, but only in futuro from the moment of such approval. The agreement made in that case as to the exact time of the approval of the bill, as observed by Mr. Justice Harlan, in Louisville Tp. v. Savings Bank, 104 U. S. 469, 477, "could not have authorized an inquiry into the fractions of a day, unless such inquiry were permissible by the established rules of law." The case of Lapeyre v. U. S., 17 Wall. 191, where a dictum to the contrary appears, was held to contain nothing to make it an authority on the question under consideration. The Lapeyre Case, decided by a divided court, it is true, was reaffirmed in U. S. v. Norton, 97 U. S. 164, where a proclamation of the president, dated June 13, 1865 (13 Stat. 763), annulling certain trade restrictions in the Southern States, was held to have taken effect as of the beginning of the day it was issued. But in that case no proof was offered or made as to fractions of the day, and hence the court held that they could not be taken into account. In other words, the general rule was applied, which is often one of convenience or necessity.

We can see no difference in the principle in its application to import duties and internal revenue taxes. The one case, as much as the other, involves a question of substantial justice in the matter of taxation, and of conflicting rights of the government on the one hand and the citizen on the other, arising under a new tariff law which repeals an old one. To such cases, as we have seen, the fiction of retrospective relation of statutes has no proper application, and the fractions of a day will be considered, in order to determine the precise moment, or punctum temporis, when the new law repealing the old one was made effective by the approval of the executive. This view is rendered more forcible by the fact that section 34 of said act above cited provides expressly that the repeal or modification of the tariff act of August 28, 1894, "shall not affect any act done, or any right accruing or accrued * * * before the said repeal or modification; but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modification had not been made." This provision is identical in language with the repealing section (72) of the tariff act of August 28, 1894 (28 Stat. 509, c. 349), which was construed by the supreme court in U. S. v. Burr, 159 U. S. 78, 15 Sup. Ct. 1002. It was said by Chief Justice Fuller that this repealing section "kept in force every right and liability of the government or any other person which

had been incurred or accrued prior to the passage of the act, and thereby every such right or liability was excepted out of the effect sought to be given to the first section." The court observed that the legislative intention was apparent that "the act of October, 1890, should remain in full force and effect until the passage of the new act on August 28th, and that all acts done, rights accrued, and liabilities incurred under the earlier act, prior to the repeal, should be saved from the effect thereof as to all parties interested, the United States included." It was held that the rights of the government to duties under the tariff act of October 1, 1890, which was in force between August 1 and August 28, 1894, was a right accruing prior to the passage of the latter act; that is, "the date when the bill became a law." The section, we may add, as is manifest, equally preserves the accrued rights of the citizen as well as those of the government. This express language of the statute, moreover, entirely harmonizes with the common-law rule that "the repeal of a statute has no effect on those rights and interests which have accrued under it, and which are passed and closed." 23 Am. & Eng. Enc. Law, 501. The court, furthermore, in the Burr Case, reiterated the well-settled general rule, often before announced, that "words in a statute ought not to have a retrospective application, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." It was observed that section 1 of the act in question (which used the same phraseology as section 1 of the present act) provided that there "shall" be levied certain specified duties. "In our judgment," said the chief justice, "the word 'shall' spoke for the future, and was not intended to apply to transactions completed when the act became a law."

There is another reason why it would seem that congress never intended that this act should be construed to be retrospective in its operations. Section 32 materially amends section 7 of the act of June 10, 1890 (26 Stat. 131). Prior to amendment, said section 7 imposed certain additional or penal duties on imported merchandise only in case "the appraised value" should "exceed by more than ten per centum the value declared in the entry." Section 32 of the new act of July 24, 1897, while it reduces the per cent. of these additional duties, entirely abrogates this 10 per cent. limitation, and imposes "an additional duty of one per centum of the total appraised value" of any imported merchandise "for each one per centum that the appraised value exceeds the value declared in the entry." These additional duties, which, as said in Bartlett v. Kane, 16 How. 274, "were enacted as discouragements to fraud, and to prevent efforts by importers to escape the legal rates of duty," have been construed to be "penalties," within the meaning of sections 5292, 5293, of the United States Revised Statutes, and were held to be subject to remission as such under the authority conferred on the secretary of the treasury to remit fines, forfeitures, and penalties. Attorney General Olney so advised the treasury department in an elaborate opinion, dated September 9, 1893 (Synopsis, 15,946), and the practice has since then obtained of their remission by the secretary within his lawful discretion. "On principle," said the attorney general, "it is clear that the so-called 'additional duty' is a penalty. It is not provided for the purpose of revenue. It is no less a penalty because proof of fraud or other willful misconduct is not a necessary preliminary to its infliction. It is, in its essence, a fine inflicted to promote honesty. Nor is it less a penalty because it is called something else. The law looks at facts, not names." Many court decisions were cited by the attorney general in support of his views, including Greely v. Thompson, 10 How. 225; Maxwell v. Griswold, Id. 242; Bartlett v. Kane, 16 How. 263, 274; Passavant v. U. S., 148 U. S. 214, 13 Sup. Ct. 572. It is true that said section 32 provides that "such additional duties shall not be construed to be penal, and shall not be remitted, nor the payment thereof avoided," except in certain cases specified. We construe this to mean that such duties shall not be interpreted to be penal, so as to be subject to remission as penalties under the sections of the Revised Statutes construed by the attorney general. It cannot be supposed that congress intended to declare that they shall not be judicially construed as penal, so far as they partake of the nature of an ex post facto law. Burgess v. Salmon, 97 U. S. 381, 384; Cummings v. Missouri, 4 Wall. 277. The authorities are uniform in holding that the fiction of the relation of statutes does not apply to penal statutes. If the above section be penal, it cannot be construed to be retro-

active for a single moment of the day on which the bill was approved by the president. As said by Judge Hughes in Salmon v. Burgess, 1 Hughes, 356; Fed. Cas. No. 12,262, which involved the precise question under consideration, it would be absurd to construe the penal sections of a law to be operative at one hour of the day and its other parts as in force at another time of the same day. "The law," he said, "is an entirety. If, as to its penal features, it cannot be held to have gone into effect until 9 p. m. of the day of its enactment, neither can it be held to have gone into effect before that hour as to its other provisions." These views are in harmony with the opinion of the supreme court in the same or a similar case on appeal. Burgess v. Salmon, supra. And a like course of reasoning was adopted in U. S. v. Burr, 159 U. S. 78, 15 Sup. Ct. 1002, involving the date on which the tariff act of 1894 went into effect. The question is one of legislative intention, rather than of mere construction. But, admitting the question to be one of doubt, as often announced, it must be resolved in favor of the importers, "as duties are never imposed on the citizen upon vague or doubtful interpretations." Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240.

There is nothing in section 33 which, in our judgment, can properly be construed to antagonize the conclusions above reached. The phrase there used is, "on and after the day when this act shall go into effect," etc., special provision being made as to goods "previously imported, for which no entry has been made," and goods "previously entered without payment of duty, and under bond for warehouse, transportation, or any other purpose." In Pugh v. Duke of Leeds, Cowp. 714, the phrases, "from the day of the date" and "from the date" were decided to mean the same thing, and this view was affirmed by the supreme judicial court of Massachusetts in Bigelow v. Willson, 1 Pick. 485. We accordingly construe the words, "on and after the day when this act shall go into effect," used in section 33, to mean simply on and after the time the act shall become operative as a law by the approval of the president. Any other view would create an embarrassing hiatus as to the status of all goods imported prior to the 24th day of July, 1897, and entered for consumption between 12 o'clock of the night of the 23d of July and six minutes after 4 p. m. of the 24th of July, when the bill received the president's signature. It is accordingly our judgment that the evidence offered as to the precise time when the act in question was approved by the president is relevant and admissible, and we so hold; and that this is a case where the fractions of a day must necessarily be considered so as to determine the conflicting rights of the government and the citizen arising under two tariff acts, each of which was operative during parts of the same day; otherwise there would seem to be a failure of substantial justice resulting from the retroactive application of a new law to transactions completed and rights accrued at the hour of its enactment. Our conclusion is: (1) That the tariff act of July 24, 1897, did not become operative as a law until six minutes after 4 o'clock p. m. of said day when it was approved by the president; (2) that it was not operative by relation on any previous hour of the day, but that the tariff act of August 28, 1894, remained unrepealed and in force until the precise moment when said act of July 24, 1897, was approved; (3) that goods imported and entered for consumption in the forenoon of said July 24, 1897 (or at any hour prior to the time of approval of said act), would be governed as to classification and rates of duty by the tariff act of 1894, and not by said act of 1897. The protests are sustained in harmony with the foregoing views, and the collector's decision in each case is reversed, with instructions to reliquidate the entries accordingly.

Max J. Kohler, Asst. U. S. Atty.
W. Wickham Smith, for defendants Iselin & Co.
Stephen G. Clarke, for defendants Hirsch & Co.

TOWNSEND, District Judge (orally). These cases raise the question whether the tariff act of July 24, 1897, commonly known as the "Dingley Act," became effective at the precise time in the day on which it was signed by the president or at the beginning of said day. The various questions involved have been exhaustively pre-

sented in the arguments and briefs of counsel, and have been carefully considered and examined. The opinion of the board of general appraisers reversing the action of the collector contains a full statement of the facts and an admirable discussion of the questions of law, and the decision of said board is hereby affirmed.