UNITED STATES v. STODDARD, HASERICK, RICHARDS & CO.

(Circuit Court, D. Massachusetts.   October 11, 1898.)

No. 701.

1. STATUTES—TIME OF TAKING EFFECT—FRACTIONS OF DAY.
  Where an act of congress takes effect by its terms from and after its passage, with a proviso that it "shall not affect any act done or any right accruing or accrued." as between the government and an individual the act does not take effect until the moment of its approval by the president, when such time can be shown.
2. CUSTOMS DUTIES—TIME OF TAKING EFFECT OF DINGLEY LAW.
  The tariff act of 1897 took effect only from the moment of its approval by the president, which was 6 minutes past 4 o'clock p. m., Washington time, on July 24, 1897: and goods imported and entered for consumption on that day, but prior to such approval, were dutiable under the law of 1894.

This is a petition by the United States to review the action of the board of general appraisers in sustaining a protest of importers, the question involved being the precise time when the Dingley law went into effect.

Boyd B. Jones, for the United States.
Josiah P. Tucker and William Odlin, for importers.

COLT, Circuit Judge.   This is a petition for review from the decision of the board of general appraisers. The importation in ques-

tion consisted of a quantity of wool which arrived in the port of Boston on the forenoon of July 24, 1897. The goods were entered for consumption before 12 o'clock noon of that day, and a permit of delivery from the collector and naval officer was at once placed in the hands of the importer, stamped "Free," under the provisions of paragraph 685 of the tariff act of 1894. By direction of the treasury department, the entries were afterwards liquidated by the collector, and a duty of 11 cents per pound assessed under paragraph 357, Schedule K, of the tariff act of July 24, 1897. The duties were paid under protest, the importer contending that the goods should be admitted free under the act of 1894, and that they were not liable to assessment under the act of 1897. The board of general appraisers sustained the protest, and reversed the decision of the collector.

The tariff act of 1897 was approved by the president at 6 minutes after 4 o'clock (Washington time) on the afternoon of July 24th. It took effect on and after its passage. Section 34 provided that:

"This act shall not affect any act done or any right accruing or accrued, * * * but all rights and liabilities under said laws shall continue, and may be enforced in the same manner as if said repeal or modifications had not been made."

The government contends that the act covers the whole of July 24th, and has relation to the first moment of that day, and that, therefore, the goods were properly subject to the duty assessed. The important question is thus presented whether the present tariff act took effect at the time of the day it was approved by the president, or whether it is so far retroactive as to include the whole of that day. The proposition of the government rests upon the general rule or legal fiction that in law there are no divisions or fractions of a day. The existence of this general rule is not questioned. At common law, before the statute of 1793 (33 Geo. III. c. 13), every act of parliament, unless a different time were fixed, took effect from the first day of the session. Panter v. Attorney General, 6 Brown, Parl. Cas. 486, 490. In support of the rule are urged the difficulties attending an inquiry into the time when a law was approved. It is said that it would make the time when a law takes effect depend upon extraneous evidence which might be conflicting, or might not be preserved; that the date or day, as a unit of time, is an unvarying guide, and, if departed from, the subject may be out of indefinitely recurring litigation. But the rule is purely one of convenience, rather than of right or justice. Both in England and in this country exceptions to the rule have always been recognized. The rule being a mere fiction, in order to do justice between the parties "the fact shall overturn the fiction." Roe v. Hersey, 3 Wils. 274. Lord Mansfield declared that, when it is necessary and can be done, the law allows fractions of a day. "It is not like a mathematical point, which cannot be divided." Combe v. Pitt, 3 Burrows, 1428, 1434. Whenever it will promote the purposes of substantial justice, common sense and common justice sustain the proposition of allowing fractions of a day. Where the priority of one legal right over another depends upon the order of events occurring the same day, or where conflicting interests are involved, the rule should be departed from. There is no indi-

visible unity about a day which forbids in legal proceedings considerations of its component hours whenever the rights of parties require it. The time of the president's approval of an act is a question of fact. By the constitution (article 1, § 7), "every bill　*　*　* shall, before it becomes a law, be presented to the president.　*　*　* If he approves he shall sign it." In case of a bill, which is approved by the president, it takes effect as a law only by such approval, or from the time of such approval. The act of approval cannot reach backward. The law prescribes a rule for the future, not for the past. Louisville v. Savings Bank, 104 U. S. 469; Bank v. Burkhardt, 100 U. S. 686, 689; In re Richardson, 2 Story, 571, Fed. Cas. No. 11,777; Potter, Dwar. St. p. 101.

Where, as in the present case, an act takes effect from and after its passage, with a proviso that it "shall not affect any act done or any right accruing or accrued," and the time of approval is not disputed, and is shown by the record, and a question of conflicting rights arises between an individual and the government, depending on the "order of events occurring on the day" of the passage of the act, it would seem a violation of justice, and of the constitutional provision referred to, to hold that the law will not recognize the fraction of a day, and that the admission of any evidence on that point must be denied. These goods were imported several hours before the president affixed his signature to the bill, and we are of opinion that they could not be assessed for duty under a statute which had not at that time become a law. The importer had a legal right to claim that his goods should be subject to duty under the law in force at the time of the importation, which was the act of 1894; and the government ought not to be permitted to deprive him of that right by relation or fiction.

But the government insists that its position is supported by the decisions of the supreme court, which are controlling. The principal cases relied upon are Arnold v. U. S., 9 Cranch, 104; Lapeyre v. U. S., 17 Wall. 191; U. S. v. Norton, 97 U. S. 164; In re Welman, 20 Vt. 653. We do not think the decisions of the supreme court sustain the government's position, as a careful analysis of the cases, especially the latest expression of opinion of that court, contained in Louisville v. Savings Bank, 104 U. S. 469, will show. We find the doctrine of the supreme court in favor of the recognition of fractions of a day in cases like the present one. In analyzing these cases, we must bear in mind the precise point which was determined by the court, and, further, that in the present case the time of the day the act was approved appears in evidence.

Arnold v. U. S. (decided in 1815) involved the question of the exaction of an additional duty of 100 per cent., under the act of July 1, 1812. The goods were imported on that day. There was no evidence as to the time in the day the president approved the bill, or the importation took place. The act provided that the additional duty should be levied "from and after the passing of this act," and the main contention of counsel was that the act could not be considered as in operation until the following day, July 2d. The court decided that the act went into effect July 1st. It did not determine the ques-

tion of the fractions of a day. That question was not, upon the evidence, before the court. In his brief the counsel contended:

"That the act imposing double duties could not, on principles of law or justice, be considered as in operation until the second day of July."

Mr. Justice Story, in the opinion of the court, said:

"It is contended that this statute did not take effect until the 2d day of July, nor, indeed, until it was formally promulgated and published. We cannot yield assent to this construction. The statute was to take effect from its passage; and it is a general rule that, where the computation is to be made from an act done, the day on which the act is done is to be included."

This last observation of Judge Story was simply a statement of the general rule, and did not involve a decision of the question now before us.

In commenting upon that case, Mr. Justice Gray (then chief justice of Massachusetts), in Bemis v. Leonard, 118 Mass. 502, 505, said:

"The statement of Mr. Justice Story, in Arnold v. U. S., that 'it is a general rule that, where the computation is to be made from an act done, the day on which the act is done is to be included,' had no application to the case before the court, in which the point decided was that a statute which was to take effect 'from and after the passing thereof' took effect immediately, without waiting for the expiration of the day on which it was passed."

Mr. Justice Story fully expressed his views on the precise point now before the court in the Richardson Case (1843) 2 Story, 571, Fed. Cas. No. 11,777. By an act approved March 3, 1843, the bankruptcy act of August 19, 1841, was repealed. The repealing act contained a proviso that it should not affect any proceeding in bankruptcy commenced before its passage. The petition in bankruptcy was filed about noon. The repealing act was not approved by the president until late in the evening of the same day. The court (page 577, 2 Story, Fed. Cas. No. 11,777) said:

"I am aware that it is often laid down that in law there is no fraction of a day. But this doctrine is true only sub modo, and in a limited sense, where it will promote the right and justice of the case. It is a mere legal fiction, and therefore, like all other legal fictions, is never allowed to operate against the right and justice of the case. On the contrary, the very truth and facts, in point of time, may always be averred and proved in furtherance of the right and justice of the case."

After citing the language of the court in Roe v. Hersey, and of Lord Mansfield in Combe v. Pitt, Judge Story proceeds:

"So that we see there is no ground of authority, and, certainly, there is no reason to assert that any such general rule prevails, as that the law does not allow of fractions of a day. On the contrary, common sense and common justice equally sustain the propriety of allowing fractions of a day, whenever it will promote the purposes of substantial justice."

After referring to article 1, § 7, of the constitution, the court proceeds:

"Now, it seems to me clear from this language that, in every case of a bill which is approved by the president, it takes effect as a law only by such approval, and from the time of such approval. It is the act of approval which makes it a law; and, until that act is done, it is not a law. The approval cannot look backward, and, by relation, make that a law, at any antecedent period of the same day, which was not so before the approval. * * * It may not, indeed, be easy, in all cases, to ascertain the very punctum temporis; but that ought not to deprive the citizens of any rights created by

antecedent laws, and vesting rights in them. In cases of doubt, the time should be construed favorably for the citizens. The legislature have it in their power to prescribe the very moment, in futuro, after the approval, when a law shall have effect; and, if it does not choose to do so, I can perceive no ground why a court of justice should be called upon to supply the defect. But when the time can be accurately and fully ascertained (as in the present case) when a bill was approved, I confess that I am not bold enough to say that it became, by relation, a law at any antecedent period of the same day. I cannot but view such an interpretation as at war with the true character and objects of the constitution."

That case is cited with approval by the supreme court in Louisville v. Savings Bank, and a part of the above quotation adopted.

In Lapeyre v. U. S., 17 Wall. 191, 195, the question for determination was whether a proclamation of the president took effect on the day it was signed, or on a subsequent day, when it was published. A majority of the court held it took effect on the day it was signed. Mr. Justice Swayne, delivering the judgment of the court, said:

"The only inquiry presented for our consideration is when the proclamation, which is the hinge of the controversy, took effect. The question arises on the third finding of the court of claims, which is as follows: 'The proclamation of the president of June 24, 1865, was not published in the newspapers until the morning of the 27th of that month; nor was it published or promulgated anywhere, or in any form, prior to said last-named day, unless its being sealed with the seal of the United States, in the department of state, was a publication or promulgation thereof.' "

Whatever was said by the court in its opinion on the point that the law does not recognize fractions of a day was dicta, and had nothing to do with the real question before it for determination; and this is the view of that case taken by the supreme court.

In Louisville v. Savings Bank, the court said:

"In Lapeyre v. U. S., 17 Wall. 191, it was said that an act of congress, unless it is otherwise declared by law, becomes operative from the first moment of the day of its passage, and, further, that 'fractions of the day are not recognized,' and 'an inquiry involving that subject is inadmissible.' In reference to that case, we remark that the question presented for determination was not as to fractions of a day, but whether a proclamation of the president, bearing date June 24, 1865, took effect on that day, or on the 27th of June, 1865, when it was first promulgated by publication in the newspapers. That case did not require a determination of the question of law now before us. The language quoted from the opinion must therefore be taken as a declaration of the general rule which obtains when the evidence does not show the necessity of regarding fractions of a day."

In U. S. v. Norton, 97 U. S. 164, the court held that the president's proclamation of June 13, 1865, removing all restrictions upon internal, domestic, and coastwise trade, took effect at the beginning of that day, and covered all transactions of that day. The short opinion in that case was delivered by Mr. Chief Justice Waite, who said:

"In our opinion, this case is governed by the decision in Lapeyre v. U. S., 17 Wall. 191, which, although not concurred in by all the justices then composing the court, is accepted as conclusive upon the questions involved. Under the ruling in that case, the proclamation took effect as of the beginning of June 13, 1865, and therefore covers all the transactions of that day to which it is applicable. We do not think this is a case in which fractions of a day should be taken into account."

It will be observed that there was no evidence in that case or question raised as to the time in the day the proclamation was signed. In

reference to that case, the supreme court, in Louisville v. Savings Bank, observed:

"In U. S. v. Norton, 97 U. S. 164, the court, while declaring, upon the authority of Lapeyre v. U. S., that the president's proclamation of June 13, 1865, removing all restrictions upon internal, domestic, and coastwise intercourse and trade, took effect as of the beginning of June 13, 1865, and covered all the transactions of that day to which it was applicable, said: 'We do not think this is a case in which fractions of a day should be taken into account.' This language of the chief justice, clearly implies that there were cases in which the court would regard fractions of a day. Besides, there was no question in that case, nor any proof made, as to the particular hour of the day when the proclamation of the president was issued."

In Welman's Case (1844) 20 Vt. 653, Judge Prentiss, in the district court for the district of Vermont, held that a statute repealing a bankrupt law, which takes effect from and after its passage, goes into operation the day on which it is approved, and has relation to the first moment of that day. In his opinion in that case (page 658), Judge Prentiss lays down the rule that, "so far as it concerns the commencement or termination of public laws, a day is an indivisible portion of time." This is clearly not the law in this country to-day, by the great weight of authority, including the supreme court.

The principal federal cases relied upon by the petitioners in support of their contention that where the fact is proved as to the time an act was signed, and there are conflicting rights, the law recognizes fractions of a day, are Burgess v. Salmon, 97 U. S. 381, Louisville v. Savings Bank, 104 U. S. 469, and In re Richardson, 2 Story, 571, Fed. Cas. No. 11,777. The last case we have already considered.

In Burgess v. Salmon, the question arose under the act of March 3, 1875, increasing the tax on tobacco to 24 cents per pound, but providing that such increase should "not apply to tobacco on which the tax under existing laws shall have been paid when this act takes effect." The act was approved on the afternoon of March 3d, and the tobacco in question was stamped, sold, and removed for consumption, and the additional duties paid under protest on the forenoon of the same day. It was held that the act did not apply to the tobacco in question. The court said:

"We are relieved by the agreed statement, to which reference was made, from examining a question of importance, and perhaps of difficulty, respecting the punctum temporis when a statute takes effect. * * * It is agreed by the parties to the record that in fact the duty of twenty per cent. had been paid on the tobacco in question, and it had been removed from the storehouse, before the act of March 3, 1875, took effect; and we content ourselves by acting upon that agreement."

But the court then proceeds to consider the merits of the question:

"We are of opinion that the government must fail, upon the facts agreed upon, to wit, that the duty of twenty per cent. had been paid, and the tobacco had been removed, before the act had been approved by the president."

The court then cites article 1, § 7, of the constitution, providing that every bill, "before it becomes a law," shall "be presented to the president." The court proceeds:

"In the present case the president approved the bill; and the time of such approval points out the earliest possible moment at which it could become

a law, or, in the words of the act of March 3, 1875, at which it could take effect."

Burgess v. Salmon is cited with approval in Louisville v. Savings Bank, and, in commenting upon it, the court said:

"It was ruled that the court could inquire as to the time of the day when the president approved the act, and that 'the time of such approval points out the earliest possible moment at which it could become a law, or, in the words of the act of March 3, 1875, at which it could take effect.' It was, consequently, adjudged that the tobacco was not subject to the increased tax imposed by a statute which was not in fact approved, and did not take effect, until after the removal, on the same day, of the tobacco. In that case the parties agreed as to the respective hours of the day when the tobacco was, in fact, stamped and removed, and when the act was approved by the president. But such an agreement could not have authorized an inquiry into fractions of a day, unless such inquiry were permissible by the established rules of law."

In Burgess v. Salmon, the parties agreed as to the time of the day the tax was paid, and as to the time of the day the act was approved by the president, and the record in the case before us presents substantially the same state of facts. That case is clearly an authority to the effect that where the punctum temporis is admitted or proved, and there are conflicting interests depending on the order of events happening on the day the act was signed, the court will recognize fractions of a day.

Louisville v. Savings Bank, 104 U. S. 469, is the latest opinion by the supreme court on this point. The section of the constitution of Illinois relating to municipal subscriptions to railroads or private corporations took effect July 2, 1870. The town of Louisville voted to issue certain township bonds on that day. The schedule providing for the submission of the constitution to popular vote expressly required that the polls should not close before sunset. The question was presented as to the time the constitution became the law of the state; and the court decided that it did not become a law until sunset of July 2d, and that township bonds issued in pursuance of an election held the same day were not invalidated. The opinion of the court by Mr. Justice Harlan contains a full discussion of the question, and a review of the cases. We have already referred to the observations made by the court in its opinion upon the prior cases of In re Richardson, Lapeyre v. U. S., U. S. v. Norton, and Burgess v. Salmon, ubi supra. The court also cited Grosvenor v. Magill, 37 Ill. 239, and said with respect to that case:

"The question involved was whether the law regards fractions of a day. The court, speaking by Mr. Justice Lawrence, said: 'It is true that for many purposes the law knows no division of a day; but whenever it becomes necessary to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day as readily as into the fractions of any other unit of time. 2 Bl. Comm. 140, notes. The rule is purely one of convenience, which must give way whenever the rights of parties require it. There is no indivisible unity about a day which forbids us, in legal proceedings, to consider its component hours, any more than about a month, which restrains us from regarding its constituent days. The law is not made of such unreasonable and arbitrary rules.' The views expressed in the last case are consistent with sound reason and public policy. They accord with our own judgment, and are in line with the settled course of decisions in other courts."

The court, after reviewing the federal decisions and some state court cases, proceeds:

"There are decisions in the English courts to the same effect. In Roe v. Hersey, 3 Wils. 274, the court characterized as a mere fiction of law the general proposition that there were no fractions of a day; that 'by fiction of law the whole time of the assizes and the whole session of parliament may be, and sometimes are, considered as one day; yet the matter of fact shall overturn the fiction in order to do justice between the parties.' 'Fictio cedit veritati; ficto juris non est ubi veritas.' In Combe v. Pitt, 3 Burrows, 1423, 1434, Lord Mansfield expressed similar views. He said: 'But though the law does not, in general, allow of the fraction of a day, yet it admits it in cases where it is necessary to distinguish. And I do not see why the very hour of the day may not be so, too, when it is necessary and can be done; for it is not like a mathematical point, which cannot be divided.'"

The court then declares:

"In view of the authorities, it cannot be doubted that the courts may, when substantial justice requires it, ascertain the precise hour when a statute took effect by the approval of the executive."

In the present case, the precise hour of approval being shown, we think that substantial justice does not warrant the assessment of a rate of duty under a law which was not passed, and therefore did not go into effect, until four hours after the importation. Judge Townsend, in the circuit court for the Southern district of New York, in the case of U. S. v. Iselin, 87 Fed. 194, took a similar view.

We have not referred to all the points raised and discussed by counsel in their able and carefully prepared briefs, but we have considered what is admitted to be the main proposition on which this case turns, and the authorities bearing thereon, and have reached the conclusion that the decision of the board of general appraisers should be affirmed. Decision of board of general appraisers affirmed.